## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................. ii

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ......... 1

STATEMENT OF THE CASE ................................ 1

FACTS ................................................ 3

ARGUMENT ............................................ 13

I.   THE JUDGE ERRED IN DENYING DEFENDANT'S MOTIONS
     FOR A REQUIRED FINDING OF NOT GUILTY WHERE THE
     EVIDENCE WAS INSUFFICIENT TO PERMIT A RATIONAL
     TRIER OF FACT TO FIND THE DEFENDANT GUILTY OF THE
     CHARGED OFFENSES BEYOND A REASONABLE DOUBT ..... 13

II.  THE FAILURE OF DEFENSE COUNSEL TO MOVE FOR
     SEVERENCE WHEN IT BECAME APPARENT THAT THE
     DEFENSES OF THE DEFENDANT AND CODEFENDANT WERE
     ANTAGONISTIC CONSTITUTED INEFFECTIVE ASSISTANCE
     OF COUNSEL. .................................... 22

CONCLUSION .......................................... 31

ADDENDUM ............................................ 32

RECORD APPENDIX ..................................... 34

Commonwealth v. Saferian, 366 Mass. 89 (1974) ....... 25

Commonwealth v. Smith, 418 Mass. 120 (1994) ......... 26

United States v. Johnson, 478 F.2d 1129 (5th Cir. 1973)
................................................ 26

## CONSTITUTIONAL PROVISIONS

Article 12 of the Declaration of Rights of the
   Massachusetts Constitution ..................... 24

Fourteenth Amendment to the United States Constitution
................................................ 24

Sixth Amendment of the United States Constitution ... 24

## STATUTES

M.G.L. chapter 94C section 32E(b)(2) ................ 15

M.G.L. chapter 94C section 32E(b)(3) ................ 14

Trial on the above-referenced indictments against the defendant and a codefendant charged with the same offenses commenced on June 21, 2000, before Page, J. and a jury. On June 23, 2000 a motion for a required finding of not guilty was allowed with respect to the indictment charging the school zone violation. (Tr.II-79).

On June 26, 2000 the jury returned verdicts of guilty on the indictments charging trafficking in cocaine. (Tr.IV-28-29) The Court sentenced the defendant on indictment no. 99-815, charging trafficking in cocaine more than one hundred but less than two hundred grams, to a term of not more than ten years and one day and not less than ten years to be served at the Massachusetts Correctional Institution at Cedar Junction and on indictment 99-816, charging trafficking in cocaine more than twenty eight grams but less than one hundred grams, to a term of not more than five years and one day and not less than five years to be served at the Massachusetts Correctional Institution at Cedar Junction, to be served concurrently with the sentence on indictment 99-815. (Tr.IV-36-37)

where they were going. (Tr.I-125) It was generally dark outside when Officer Kervick made his observations. (Tr.II-202) From the surveillance point across the street from the market to the front of the market is approximately 55 feet. (Tr.II209,210,212)

The general descriptions of the defendant, codefendant, Silvio Ali and Franklin Garcia are similar. (Tr.II-201) The defendant fit the general description contained in the warrant of being a Dominican male, short black hair, dark complected. (Tr.II-213) The descriptions in the search warrant belonged to the codefendant and Mr. Garcia. (Tr.II-213)

Individuals seen at the market on more than one occasion were Clebis Lebron (hereinafter "the codefendant") and Franklin Garcia. (Tr.I-125) The codefendant was identified as one of the defendants on trial. (Tr.I-126) The defendant was also observed in the market in the time period between September and December 1998. (Tr.I-126; II-80) Officer Kervick believed that these three people were selling narcotics. (Tr.II-79)

The codefendant was observed at the market five or six times. (Tr.I-127) He was working there. (Tr.I-

-4-

Toward the end of the investigation, the defendant was observed working behind the counter at the market. (Tr.II-82,83) Officer Kervick observed the defendant go from the market to the Orange Street address three or four times; once he stayed at the Orange Street address for an hour, on another occasion he only stayed for ten to fifteen minutes. (Tr.II-85,86) When he left the Orange Street address he returned to the market. (Tr.II-85)

Officer Kervick also testified that he could not determine whether there were other people present at the Orange Street apartment when the defendant was observed going there. (Tr.II-190,191) The Springfield Police Department booking sheet lists the defendant's address as 392 High Street, Holyoke and his employment at a restaurant in Holyoke. (Tr.II-194,195)

The targets of the search warrants were the codefendant and Franklin Garcia. (Tr.I-195) Officer Lozada testified that, with respect to the defendant's brother, Silvio Ali, he, "knew he was involved," but he was arrested early on in the investigation. (Tr.I-195)

Silvio Ali was observed at the market up until November 5, when he was arrested. (Tr.II-84) He was

letter from HB Hood to Moises Market and phone bill were also seized and all were in the name of Silvio Ali. (Tr.I-223,224,225)

Nothing suggestive of narcotics activity was found near the counter or in the market part of the location. (Tr.I-188) One envelope was recovered from the market with the codefendant's name on it, addressed to the owner of the market. (Tr.I-189)

Police searched the dirt basement of the market for approximately an hour and a half. (Tr.I-136,191) After twenty minutes of searching they found a couple of plastic bags inside a paper bag. (Tr.I-136,191) The paper bag was put away in between crates in a way which suggested that it was being hidden. (Tr.I-138) The plastic bags contained a white powdery substance. (Tr.I-136)

⟶ Only one arrest report was written. (Tr.I-168) The report was written by Officer James Kervick but contained information from Officer Lozada because Officer Kervick was executing a warrant at the Orange Street address while Officer Lozada was executing the warrant at the market. (Tr.I-168) The three page report makes no mention of either officer observing the codefendant or the defendant go from the market to ⟵

- 8-

There was a table in the back bedroom with a sifter, a drug ledger, sandwich bags, packaging material, a scale and duct tape on it. (Tr.I-251,252) Police observed cocaine in a vice in the rear bedroom and a lamp on the floor. (Tr.II-48,49) Police recovered a quantity of cocaine wrapped in brown paper and duct tape in the vice. (Tr.II-59,60)

In the middle room of the third floor apartment police found five hundred and seventy-three dollars. (Tr.II-11,12) The money was in a box which contained paperwork. (Tr.II-12)

In a rear bedroom in the apartment police found a drug ledger underneath a mattress on a bed. (Tr.II-13,14) The ledger had common numbers as well as the notation "P" or "F" after them. (Tr.II-58) "P" generally stands for paid, "F" usually stands for fronted. (Tr.II-59)

In the front bedroom police found a quantity of cocaine in the pocket of a pair of pants in a closet. (Tr.II-19) They also found several pill bottles with the name of the defendant on a shelf in the closet. (Tr.II-21)

In a room off of the kitchen police found personal papers with the names of two individuals on

he rented it to someone who assigned the lease to Silvio Ali. (Tr.III-56,57)

Juan Rondon testified that his mother and daughter own the property at 137-139 Orange Street. (Tr.III-61) In the period between October and December, 1998 the third floor apartment was rented to Silvio Ali. (Tr.III-61,62) Franklin Garcia and Silfredo Ali also lived there. (Tr.III-62) Mr. Rondon saw the defendant at the apartment three or four times a week. (Tr.III-69) Mr. Rondon does not remember seeing the defendant at the apartment in November or December because he would disappear for awhile. (Tr.III-70)

The codefendant testified that he worked at Moises Market between December 8 and December 11, 1998 with the defendant. (Tr.III-93) Prior to that time he had been living and working in New York. (Tr.III-84)
The defendant's case.

The defendant testified that he lived in Holyoke at 392 High Street. (Tr.III-104,105) He visited his brother Silvio in Springfield a couple of times a week during his free time. (Tr.III-105,106) He was employed at a restaurant called the Salsa Renge in Holyoke as a

-12-

law. (Tr.III-46; App.-10,11,12) The judge denied all of the motions requesting a required finding.[2]

On appeal of the denial of a motion for a required finding of not guilty, the question as to each indictment is, "whether any rational trier of fact, taking the evidence and reasonable inferences there from in the light most favorable to the Commonwealth, could have found the essential elements of the crime beyond a reasonable doubt." Commonwealth v. Cruz, 34 Mass. App. Ct. 619, 621 (1993) quoting Commonwealth v. Arias, 29 Mass. App. Ct. 613, 617 (1990), citing Commonwealth v. Latimore, 378 Mass. 671, 677 (1979) and Commonwealth v. Merola, 405 Mass. 529, 533 (1989).

Both indictments charged the defendant with trafficking in cocaine. Indictment 99-815 charges trafficking in cocaine in an amount less than 200 grams in violation of M.G.L. chapter 94C section 32E(b)(3) and relates to the cocaine found at 137-139 Orange Street and indictment 99-816 charges

---

[2] The judge did allow a motion for a required finding on indictment 99-817, charging the defendant with a school zone offense, based on the failure of the commonwealth to provide a competent witness to testify to the actual distance. (Tr.II-)

-14-

App. Ct. 619, 621 (1993), citing Commonwealth v. Brzezinski, 405 Mass. 401, 409 (1989).

150 Belmont Avenue - Indictment 99-816.

The only evidence offered to prove the defendant's possession with intent to distribute cocaine at the Belmont Avenue address, Moises Market, consisted of his presence behind the counter when a warrant was executed there on December 11 (Tr.I-132,133,134,207), observations of the defendant in the store once or twice in December during the course of an investigation lasting from October through December (Tr.I-123,132), observation of the defendant working behind the counter toward the end of the investigation (Tr.II-82,83), and observation of the defendant going from the market to the Orange Street address three or four times (Tr.II-85,86).

No drugs were found on the defendant at the time of his arrest. No drugs were found near the counter where he was located when police entered the market. (Tr.I-188) One hundred dollars was found on the defendant. (Tr.I-165) The only drugs found at the Belmont Avenue address were found hidden in the basement of the market. (Tr.I-136)

- 16-

Taken in the light most favorable to the Commonwealth, the evidence was insufficient to prove that the defendant had knowledge of the drugs hidden in the dirt basement of the store or that he had the ability and intention to exercise dominion and control over them. The only evidence was observations of the defendant at the market working behind the counter a few times.

Although it could be reasonably inferred that if the defendant worked at the store he may have had reason to go to the basement, "[p]resence and awareness alone do not constitute evidence which warrants an inference of ability and intention to exercise control of the illicit substance." Commonwealth v. Brown, 34 Mass. App. Ct. 222,226 (1993). Further, the drugs found in the basement were not in plain view, but were hidden inside a bag stuffed between milk crates. (Tr.I-136) Although it may be reasonable to infer that the defendant had access to the basement, there is no evidence from which one could infer that he had knowledge of drugs which were hidden there.

The defendant had one hundred dollars in U.S. currency on him when he was arrested. This evidence,

- 17-

trafficking in cocaine in an amount less than 100 grams in violation of M.G.L. chapter 94C section 32E(b)(2) and relates to the cocaine found at the 150 Belmont Avenue address. (Tr.I-104; App.-8,9)

Proof of the offense of trafficking in cocaine requires proof of five elements. With the exception of the weight of the cocaine, the fifth element, both indictments required proof of the same four elements: (1) that the defendant possessed a substance, (2) that the substance was cocaine, (3) that the defendant possessed the cocaine knowingly and intentionally, and (4) that the defendant had the specific intent to distribute the cocaine. (M.G.L.A. c. 94C sec. 32E (b); Tr.III-189)

The Commonwealth presented no evidence that the defendant had actual possession of any of the drugs involved. Therefore, the burden was on the Commonwealth to show that the defendant had constructive possession of the drugs. "For constructive possession to be found, the defendant had to know of the presence of the cocaine, and he had to have the ability and intention to exercise dominion and control over it." Commonwealth v. Cruz, 34 Mass.

-15-

kitchen helper. (Tr.III-106) He generally worked from seven until three or four. (Tr.III-107)

He never lived at 137-139 Orange Street. (Tr.III-107) Silvio and Franklin Garcia lived there. (Tr.III-107) When his brother was not at the Orange Street address he would visit him at the market. (Tr.III-108) His brother owned the market. (Tr.III-108) The defendant never worked at the market but he did help out there. (Tr.III-108)

With respect to the prescription pills found at the Orange Street address, the defendant testified that he either left them at his brother's apartment or in his brother's car. (Tr.III-113)

## ARGUMENT

I. THE JUDGE ERRED IN DENYING DEFENDANT'S MOTIONS FOR A REQUIRED FINDING OF NOT GUILTY WHERE THE EVIDENCE WAS INSUFFICIENT TO PERMIT A RATIONAL TRIER OF FACT TO FIND THE DEFENDANT GUILTY OF THE CHARGED OFFENSES BEYOND A REASONABLE DOUBT

The defendant moved for a required finding of not guilty on both indictments at the close of the Commonwealth's case, at the end of the trial and again in a post-verdict motion supported by a memorandum of

them inside of some boxes. (Tr.II-27,28) One of the documents was a phone bill for Moises Market in the name of Silvio Ali. (Tr.II-36,37)

Other documents seized in this room off of the kitchen were bank statements with the address "Clebis Lebron dba Moises Grocery, 150 Belmont Avenue." (Tr.II-37,38) The bank account on the statements was the same as that on the cancelled checks seized. (Tr.II-39) Every check was signed by Silvio Ali. (Tr.II-39)

In the kitchen, police found packaging materials: several sandwich bags with the corners torn off, duct tape wrapped around tissue paper and two sifters. (Tr.II-30,31,33,34)

On December 7, 1998 police observed a blue Toyota Celica drive from Moises Market to 137-139 Orange Street. (Tr.II-11,20,21) The car was owned by Silvio Ali. (Tr.II-31) A man got out and went into 137-139 Orange Street, then came back out a few minutes later. (Tr.II-37) Officer Moriarty identified the man he saw get out of the car as the codefendant. (Tr.II-38)

The codefendant's case.

Lennox Stamp testified that he owned the property at 150 Belmont Avenue. (Tr.III-55) He testified that

-11-

the Orange Street address. (Tr.I-171, Tr.II-107,151,154,155)

On December 11, 1998 police officers Kervick, Dowd, Witherspoon and Johnson, Lieutenant Cook and some uniformed officers executed a search warrant at 137-139 Orange Street. (Tr.I-227,228; II-86) Upon entering the third floor, the officers secured Franklin Garcia. (Tr.I-229) Police searched Franklin Garcia and found two hundred and seven dollars. (Tr.II-29)

In the back bedroom, police found cocaine and packaging material, scales, sifter and plates. (Tr.I-230) On top of the plates found were piles of cocaine, razor blades and cards. (Tr.I-242) The blades and cards are used to mix cutting agents and to measure out quantities of drugs for sale. (Tr.I-243) Two gym bags containing a bag of cocaine each were found on the floor. (Tr.I-238,240,241)

Police found a notebook pad on the floor next to the plates with cocaine on them. (Tr.II-56) The pad had notations of numbers and names. (Tr.II-56) These notations were consistent with the recording of amounts of cocaine and sales used by narcotics dealers. (Tr.II-57)

- 9 -

incarcerated for one week and then released. (Tr.II-179-181)

On December 11, 1998, Officer Lozada, Officer Maldonado, Officer Petrie, Officer Patruno, Officer Gentile and Officer Tardiff went to the market to execute a search warrant. (Tr.I-132,207) When the officers arrived at the market, the defendant and codefendant were there. (Tr.I-133) They were both behind the counter. (Tr.I-133,134) Upon arriving and announcing "Police. Raid. We have a search warrant." Both the defendant and codefendant were handcuffed and placed out of the way. (Tr.I-133)

Police searched the codefendant and found two keys, both of which unlocked the doors to the store and fifty-three dollars. (Tr.I-134,135,190) Police searched the defendant and found one hundred dollars. (Tr.I-165)

Police recovered two hundred and seventy six dollars from the cash register and an additional fifty-eight dollars from a sugar box behind the counter. (Tr.I-206,208) Police also found checks on a Fleet bank account that were signed by Silvio Ali, the defendant's brother. (Tr.I-211,223) A bank statement, motor vehicle titles, insurance policy statement,

-7-

127) He was observed driving a car from the market to 137-139 Orange Street. (Tr.I-127-128) From observations of the lights being turned on, the officers concluded that he went to the third floor of 137-139 Orange Street. (Tr.I-128) Sometimes he would spend the night, other times he would only stay at the Orange Street address briefly, about five minutes, before returning to the store. (Tr.I-128,129) he was observed going from the market to the Orange Street address between two and eight times. (Tr.I-193; II-86)

Both the codefendant and Franklin Garcia were seen locking up the market. (Tr.I-129,130) Mr. Garcia was seen at the market often. (Tr.I-130) Mr. Garcia was also seen making trips from the market to the third floor of the Orange Street address and back to the market again. (Tr.I-130,131; II-81) The codefendant and Mr. Garcia were seen together three or four times. (Tr.II-87)

During the investigation, no one else was observed on more than one occasion at the market. (Tr.I-131) The defendant was seen at the market once or twice in early December in addition to the day of his arrest, December 11, 1998. (Tr.I-132)

The defendant filed a Notice of Appeal on June 29, 2000. (App.-15) The appeal was docketed in the Appeals Court on August 8, 2001.

FACTS

In October 1998 Springfield police officers Joselito Lozada and James Kervick began surveillance of two locations: 150 Belmont Street, Moises Market, and 137-139 Orange Street, a three family house. (Tr.I-121,122,123,124; Tr.II-5,75,76)[1] Moises Market is a small Spanish market. (Tr.I-124) It was a fully operational convenience store. (Tr.I-213) Police determined in the course of the investigation that the business at 150 Belmont Avenue was listed in the name of the codefendant. (Tr.I-180)

Between the start of the investigation and the arrests the officers conducted between six and eight surveillances. (Tr.I-124) The arrests happened on December 11, 1998. (Tr.I-132)

The officers usually went to the market at night in order to follow the subjects from the store to

---

[1] References to the transcript of the trial will be denoted as (Tr.I-) through (Tr.IV-). References to the transcripts of two pretrial hearings will be denoted as (Tr.Dec.16-) and (Tr.Jun.20-) respectively.

-3-

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1. Whether the judge erred in denying the defendant's motions for a required finding of not guilty; specifically, whether the evidence presented by the Commonwealth was sufficient as a matter of law to permit a rational trier of fact to find that the essential elements of the crimes charged were proved beyond a reasonable doubt.

2. Whether the defendant was deprived of the effective assistance of counsel; specifically, whether defense counsel, in failing to move to sever the defendant's trial from that of his codefendant, likely deprived the defendant of an otherwise available, substantial ground of defense.

## STATEMENT OF THE CASE

On April 27, 1999 a Hampden County grand jury returned three indictments against the defendant charging him with trafficking in cocaine, G.L. c. 94C, sec. 32E(b)(3), trafficking in cocaine, G.L. c. 94C, sec. 32E(b)(2) and trafficking in cocaine in a school zone, G.L. c. 94C, sec. 32(j). (App.-8,9)

-1-

## TABLE OF AUTHORITIES

### CASES

Beasley v. United States, 491 F.2d 687 (6th Cir. 1974) .................................................... 25

Commonwealth v. Antonio, 45 Mass. App. Ct. 937 (1998) .................................................... 21

Commonwealth v. Arias, 29 Mass. App. Ct. 613 (1990) . 14

Commonwealth v. Armand, 411 Mass. 167 (1991) ........ 18

Commonwealth v. Booker, 31 Mass. App. Ct. 435 (1991) 21

Commonwealth v. Brown, 34 Mass. App. Ct. 222 (1993) . 17

Commonwealth v. Brzezinski, 405 Mass. 401 (1989) ..... 16

Commonwealth v. Cepulonis, 374 Mass. 487 (1978) ..... 26

Commonwealth v. Cruz, 34 Mass. App. Ct. 619 (1993) .. 14

Commonwealth v. Fuller, 394 Mass. 251 (1985) ........ 25

Commonwealth v. Haggerty, 400 Mass. 437 (1987) ...... 25

Commonwealth v. Latimore, 378 Mass. 671 (1979) ...... 14

Commonwealth v. Martinez, 37 Mass. App. Ct. 948 (1994) .................................................... 26

Commonwealth v. Merola, 405 Mass. 529 (1989) ........ 14

Commonwealth v. Moran, 387 Mass. 644 (1982) ......... 26

Commonwealth v. Navarro, 39 Mass. App. Ct. 161 (1995) .................................................... 18

Commonwealth v. Ramos, 51 Mass. App. Ct. 901 (2001) . 20

41