# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

### CA. NO.:   04-30005-MAP

### SILFREDO ALI
**Petitioner**

v.

### STEVEN O'BRIEN, et al.
**Respondent**

## PETITIONER'S BRIEF IN SUPPORT OF APPLICATION FOR HABEAS CORPUS

**Attorney for Petitioner:**
**JOSEPH D. BERNARD**
The Law Offices of Joseph D. Bernard, P.C.
73 State Street, Suite 301
Springfield, MA 01103
(413) 731-9995
(413) 730-6647 fax
BBO#: 557986

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ……………………………………………………3, 4

ISSUES PRESENTED ……………………………………………………………..4

STATEMENT OF CASE …………………………………………………………..4

STATEMENT OF FACTS …………………………………………………………7

SUMMARY OF ARGUMENT ………………………………………..................12

ARGUMENT

    I.       STANDARD OF REVIEW ……………………………………......13

    II.     THE JUDGE ERRED IN DENYING DEFENDANT'S MOTIONS FOR
          A REQUIRED FINDING OF NOT GUILTY WHERE THE EVIDENCE
          WAS INSUFFICIENT TO PERMIT A RATIONAL TRIER OF FACT
          TO FIND THE DEFENDANT GUILTY OF THE CHARGED
          OFFENSES BEYOND A RESONABLE DOUBT …………………15

          A.     INTRODUCTION …………………………………………...15

          B.     "MOISES MARKET" ………………………………………17

          C.     "ORANGE STREET RESIDENCE" ………………………..22

CONCLUSION …………………………………………………………………..25

## TABLE OF AUTHORITIES

### CASES

In re Winship, 397 U.S. 358 (1970)..……………………………………………11

Jackson v. Virginia, 443 U.S. 307, 315 (1979) ……………………………………..11

Williams v. Taylor, 529 U.S. 362, 405 (2001) ……………………………………..13

Hurtado v. Tucker, 245 F.3d 7, 16 (1st Cir. 2001) …………………………………12

Williams v. Matesanz, 230 F.3d 421, 425 (1st Cir. 2000) …………………………13

Commonwealth v. Arias, 29 Mass. App. Ct. 613, 618 (1990) ………………………14

Commonwealth v. Antonio, 45 Mass. App. Ct. 937, 938 (1998) …………………..20

Commonwealth v. Armand, 411 Mass. 167, 170 (1991) …………………………....18

Commonwealth v. Booker, 31 Mass. App. Ct. 435, 437-438 (1991) ………………20

Commonwealth v. Brown, 34 Mass. App. Ct.. 222, 226 (1993) ……………………16

Commonwealth v. Brzezinski, 405 Mass. 401, 409-10 (1989) ………………………15

Commonwealth v. Cruz, 34 Mass. App. Ct. 619, 621 (1993) ………………………14

Commonwealth v. James, 54 Mass. App. Ct. 726 (2002) …………………………..16

Commonwealth v. Latimore, 378 Mass. 671, 677 (1979) …………………………..14

Commonwealth v. Lebron, 438 Mass. 1109 (2003) …………………………………5

Commonwealth v. Lebron, 56 Mass. App. Ct. 1116 (2002) ………………………...4

Commonwealth v. Merola, 405 Mass. 529, 533 (1989) …………………………….14

Commonwealth v. Movilis, 46 Mass. App. Ct. 574, 577 (1999) …………………....17

Commonwealth v. Navarro, 39 Mass. App. Ct. 161,169 (1995) ……………………18

Commonwealth v. Ramos, 51 Mass. App. Ct. 901, 902 (2001) ……………………..20

## CONSTITUTIONAL PROVISIONS

FOURTEEN AMENDEMENT TO THE UNITED STATES CONSTITUTION .....11

### STATUTES

28 U.S.C. §2254 ...................................................................11

### ISSUES PRESENTED

I.      Whether the Massachusetts Appeals Court affirmation of trial judge's denial of the

Petitioner's motions for required findings of not guilty was an unreasonable application

of Jackson v. Virginia, 443 U.S. 307 (1979), and thus in error; specifically, whether

evidence of the Petitioner's presence at Moises Market and the presence of two (2) pill

bottles with the Petitioner's name at the Orange Street residence was sufficient for a jury

to infer his constructive possession and intent to distribute over 28 but less than 100

grams of cocaine and over 100 but less than 200 grams of cocaine on Hampden County

Indictments #99-815 and #99-816.

### STATEMENT OF CASE

The Petitioner, Silfredo Ali, appealed from his conviction in the Hampden County

Superior Court to the Massachusetts Court of Appeals on two (2) indictments returned April 27,

1999, by the Hampden County grand jury, charging him, on indictment No. 99-815, with

trafficking in cocaine more than one hundred (100) but less than two hundred (200) grams, and

on indictment No. 99-816, with trafficking in cocaine more than twenty eight (28) but less than

one hundred grams (100).[1]  Trial counsel moved three (3) times for a required finding of not

guilty on these indictments: once at the close of the Commonwealth's case, once at the close of

all of the evidence, and with a post-verdict motion. (Tr.-V-46; R.-16-19).  It was error to deny

---

[1] References to the transcript of the trial will be denoted as (Tr.-I-) through (Tr.-IV-).  References to the record appendix will be denoted as (R.-).

4

these motions where the evidence, taken in the light most favorable to the Commonwealth, was insufficient to prove the essential elements of the charged offenses.

Trial on the above-referenced indictments against the Petitioner and a co-defendant charged with the same offenses commenced, on June 21, 2000, in the Hampden County Superior Court before Page, J. and a jury. On June 23, 2000 a motion for a required finding of not guilty was allowed with respect to indictment No. 99-817, charging trafficking in cocaine in a school zone. (Tr.-IV-79).

On June 26, 2000, the jury returned verdicts of guilty on the indictments charging trafficking in cocaine. (Tr.-VI-28, 29). The Court sentenced the Petitioner on indictment No. 99-815, charging trafficking in cocaine more than one hundred (100) but less than two hundred (200) grams, to a term of not more than ten (10) years and one day and not less than ten (10) years to be served at the Massachusetts Correctional Institution at Cedar Junction and on indictment No. 99-816, charging trafficking in cocaine more than twenty eight (28) grams but less than one hundred (100) grams, to a term of not more than five (5) years and one day and not less than five (5) years to be served at the Massachusetts Correctional Institution at Cedar Junction, to be served concurrently with the sentence on indictment No. 99-815. (Tr.-VI-36, 37).

The Petitioner filed a Notice of Appeal on June 29, 2000. The appeal was docketed in the Massachusetts Appeals Court on August 8, 2001. On December 23, 2002, the Massachusetts Appeals Court affirmed the Petitioner's convictions on both indictments in a decision issued pursuant to Rule 1:28. Commonwealth v. Lebron, 56 Mass. App. Ct. 1116 (2002).

With regards to the Petitioner's claim that it was error to deny his motions for a required finding of not guilty as the evidence was insufficient to support his conviction, the Massachusetts Appeals Court accepted the "statement of facts set out in the Commonwealth's memorandum of

law in support of its motion for summary disposition" and ruled that the motions for required

findings were correctly denied. Id. In support, the Massachusetts Appeals Court accepted "*the*

*reasons set out in specific detail in the Commonwealth's memorandum* (at 13-19)." Id.

(emphasis added).

On or about January 14, 2003, the Petitioner applied for further appellate review with the

Supreme Judicial Court of Massachusetts. Commonwealth v. Lebron, 438 Mass. 1109 (2003)

(appeal denied). In his application and memorandum in support, the Petitioner requested further

appellate review of his convictions on Hampden County indictments No. 99-815 and 99-816

because the evidence presented at trial was insufficient to permit a rational trier of fact to find the

Petitioner guilty of the charged offense beyond a reasonable doubt. On or about February 27,

2003, the Supreme Judicial Court of Massachusetts denied the Petitioner's application for further

appellate review. Commonwealth v. Lebron, 438 Mass. 1109 (2003) (appeal denied).

On or about November 18, 2003, the Petitioner filed a "Petition Under 28 U.S.C. § 2254

For Writ of Habeas Corpus By a Person in State Custody" with the United States District Court,

District of Massachusetts, Western District. In his petition, Mr. Ali asserted two (2) grounds on

which this court should grant relief of habeas corpus. However, both grounds asserted state only

one (1) isolated issue—whether the trial judge erred in denying the Petitioner's motion for

required findings of not guilty on his two convictions as there was insufficient evidence to permit

a trier of fact to find the Petitioner guilty of the charged offenses beyond a reasonable doubt. On

or about January 13, 2004, United States District Judge Michael Ponsor ordered the Respondents

in this matter to answer the above-mentioned petition. On or about March 31, 2004, the

Respondents answered Mr. Ali's petition.

## STATEMENT OF FACTS RELEVANT TO THE ISSUES PRESENTED IN THE PETITIONER'S APPLICATION FOR WRIT OF HABEAS CORPUS

In October 1998, Springfield, Massachusetts police began surveillance of two locations: 150 Belmont Street (Moises Market) and 137-139 Orange Street, a three (3) family house. (Tr.-III-121, 122, 123, 124; Tr.-II-5, 75, 76). Moises Market is a small Spanish market operated as a convenience store. (Tr.-III-124, 213). Police determined in the course of their investigation that the business, Moises Market, was listed in the name of the Petitioner's brother, Silvio Ali. (Tr.-III-180).

Between the start of the investigation and the arrests, the officers conducted between six (6) and eight (8) surveillances. (Tr.-III-124). The police make no observation of the Petitioner until late November or the early part of December 1998. (Tr.-IV- 86). The investigation concluded on December 7, 2005 (Tr.-IV-81) and the arrests in this matter occurred on December 11, 1998. (Tr.-III-132).

During their investigation officers went to the market at night in order to follow the subjects from the store to where they were going and to determine who had keys to the market. (Tr.-I-125). It was generally dark outside when the officers made their observations and from the surveillance point across the street to the front of the market it is approximately fifty-five (55) feet. (Tr.-IV-202, 209, 210, 212).

The general descriptions of the Petitioner, co-defendant (Clebis Lebron), Silvio Ali, and Franklin Garcia, are similar. (Tr.-IV-201). The Petitioner fits the general description contained in the warrant of being a Dominican male, short black hair, with a dark complexion. (Tr.-IV-213). The descriptions in the search warrant however belonged to the co-defendant and Mr. Garcia as they were the targets of the search warrants. (Tr.-IV-213; Tr.-III-195).

According to testimony by police officers, the individuals observed at the market on more than one (1) occasion were Clebis Lebron (hereinafter "the co-defendant") and Franklin Garcia (Tr.-III-125). During the investigation, no one else was observed on more than one (1) occasion at the market. (Tr.-III-131). The Petitioner was observed at the market once (1) or twice (2) in early December 1998, in addition to the day of his arrest—December 11, 1998. (Tr.-III-132). On December 11, 1998, it was believed that the Petitioner was observed working behind the counter at the market. (Tr.-IV-82, 83).

Officer Kervick testified at trial that he observed the Petitioner go from the market to the Orange Street address on two (2) to three (3) occasions during the course of the investigation. (Tr.-IV-85, 86). One time the Petitioner stayed at the Orange Street address for an hour and on other occasions he only stayed for ten (10) to fifteen (15) minutes. (Tr.-IV-85, 86). According to Officer Kervick, when the Petitioner left the Orange Street address on these occasions he then returned to the market. (Tr.-IV-85).[2] Officer Kervick further testified that he could not determine whether there were other people present at the Orange Street apartment when the Petitioner was observed going there. (Tr.-IV-190, 191).

On December 11, 1998, police went to the market to execute a search warrant. (Tr.-III-132, 207). When the officers arrived at the market, the Petitioner and co-defendant were present behind the counter. (Tr.-III-133, 134). Officers searched the co-defendant and found two (2) keys, both of which unlocked the doors to the store and fifty-three ($53.00) dollars. (Tr.-III-134, 135, 190). The police searched the Petitioner and only found one hundred ($100.00) dollars (Tr.-III-165).

---

[2] However, the three (3) page arrest report makes no mention of either officer observing the Petitioner or codefendant go from the market to the Orange Street address (Tr.-III-171; Tr.-II-107, 151, 154, 155).

The police recovered two hundred and seventy six dollars ($276.00) from the cash register and an additional fifty-eight dollars ($58.00) from a sugar box behind the counter (Tr.-III-206, 208). The police also found checks on a Fleet Bank account that were signed by Silvio Ali, the Petitioner's brother (Tr.-III-211, 223); a bank statement; motor vehicle titles; insurance policy statement; a letter from HB Hood to Moises Market; and phone bills all in the name of Silvio Ali (Tr.-III-223, 224, 225).[3] Additionally, one (1) envelope was recovered from the market with the co-defendant's name on it, addressed to the owner of the market. (Tr.-III-189). Nothing suggestive of narcotics activity was found near the counter or in the market part of the Moises Market. (Tr.-III-188).

Officers then proceeded to search the dirt basement of the market. (Tr.-III-136, 191). After approximately twenty (20) minutes of searching they found a couple of plastic bags inside a paper bag. (Tr.-III-136, 191). The plastic bags contained a white powdery substance later determined to be cocaine. (Tr.-III-136).

On December 11, 1998, police officers also executed a search warrant at 137-139 Orange Street. (Tr.-III-227, 228; Tr.-IV-86). Upon entering the third (3rd) floor of the residence, the officers secured Franklin Garcia and found two hundred and seven dollars ($207.00) on his person. (Tr.-IV-29).

In the back bedroom of the third (3rd) floor apartment, police found cocaine and-packaging material, scales, sifter and plates. (Tr.-III-230). On top of the plates found were piles of cocaine, razor blades, and cards. (Tr.-III-242). Two (2) gym bags containing a bag of cocaine each were found on the floor. (Tr.-III-238, 240, 241). Officers found a notebook on the floor

---

[3] Officer Lozada testified that, with respect to the Petitioner's brother, Silvio Ali, he "knew he was involved," but he was arrested early on in the investigation (Tr.-III-195). Silvio Ali was observed at the market up until November 5, 1998 when he was arrested (Tr.-IV-84) He was incarcerated for one week and then released (Tr.-IV-179, 181).

next to the plates with cocaine on them. (Tr.-IV-56). The notebook had notations of numbers and names which were consistent with the recording of amounts of cocaine and sales used by narcotics dealers. (Tr.-IV-56, 57).[4]

Further, there was a table in the back bedroom with a sifter, a drug ledger, sandwich bags, packaging material, a scale and duct tape on it. (Tr.-III-251, 252). Officers observed cocaine in a vice in the rear bedroom and a lamp on the floor. (Tr.-IV-48, 49). Officers recovered a quantity of cocaine wrapped in brown paper and duct tape in the vice. (Tr.-IV-59, 60).

In the middle room of the third (3rd) floor apartment officers found five hundred and seventy-three dollars ($573.00). (Tr.-IV-11, 12). The money was in a box which contained paperwork. (Tr.-IV-12).

In the front bedroom police found a quantity of cocaine in the pocket of a pair of pants in a closet. (Tr.-IV-19). They also found several pill bottles with the name of the Petitioner on a shelf in the closet. (Tr.-IV-21).

In a room off of the kitchen police found personal papers with the names of two (2) individuals on them inside of some boxes. (Tr.-IV-27, 28). One of the documents was a phone bill for Moises Market in the name of Silvio Ali. (Tr.-IV-36, 37). The other documents seized in this room off of the kitchen were bank statements with the address "Clebis Lebron dba Moises Grocery, 150 Belmont Avenue." (Tr.-IV-37, 38). The bank account on the statements were the same as that on the cancelled checks seized from the market. (Tr.-IV-39). Every check was signed by Silvio Ali. (Tr.-IV-39). In the kitchen, the police found the following packaging

---

[4] In a rear bedroom in the apartment police found a drug ledger underneath a mattress on a bed. (Tr.-IV-13, 14). The ledger had common numbers as well as the notation "P" or "F" after them. (Tr.-IV-58). "P" generally stands for paid; "F" usually stands for fronted. (Tr.-IV-59).

materials: several sandwich bags with the corners torn off, duct tape wrapped around tissue paper and two sifters. (Tr.-IV-30, 31, 33, 34).

Juan Rondon testified that he lived on the second floor at 137-139 Orange Street and that this property was owned by his wife and daughter. (Tr.-V-61). He testified that sometime in the fall of 1998 he rented the third (3rd) floor apartment to Silvio Ali and that Franklin Garcia and Silfredo Ali also lived there. (Tr.-V-61, 62).

On cross-examination, Rondon testified that he entered into a verbal lease with Silvio Ali in April or May of 1998 and that Silvio worked at a store on Belmont with Franklin Garcia. (Tr.-V-68, 69). Rondon claims that he saw the Petitioner at the Orange Street address at various times of the day, three (3) or four (4) times a week. (Tr.-V-69). Further, he also stated that he would not see the Petitioner for extended periods of time as the Petitioner would "disappear for a while." (Tr.-V-70).

The Petitioner testified at trial that he lived in Holyoke at 392 High Street. (Tr.-V-104, 105). He further testified that he visited his brother Silvio Ali in Springfield a couple of times a week during his free time (Tr.-V-105, 106); that he was employed at a restaurant called the Salsa Renge in Holyoke as a kitchen helper (Tr.-V-106); and that he generally worked from seven (7) a.m. until three (3) or four (4) p.m. (Tr.-V-107). Additionally, the Springfield Police Department booking sheet lists the Petitioner's address as 392 High Street, Holyoke and his employment at a restaurant in Holyoke. (Tr.-IV-194, 195).

The Petitioner testified that he never lived at 137-139 Orange Street and that only Silvio Ali and Franklin Garcia lived there. (Tr.-V-107). When his brother was not at the Orange Street address he would visit him at the market as his brother owned the market (Tr.-III-108). The

11

Petitioner testified that he never worked at the market but he did help out there on occasions. (Tr.-V-108).

The Petitioner additionally testified that, with respect to the prescription pills found at the Orange Street address, he either left them at his brother's apartment (Silvio Ali) or in his brother's car and his brother placed them in the apartment. (Tr.-V-113).

## SUMMARY OF ARGUMENT

A petitioner may challenge a state conviction under 28 U.S.C.A. § 2254, which requires a federal court to entertain the state prisoner's claim that he is being held in custody in violation of the Constitution or laws of the United States. Under Article Fourteen of the United States Constitution and the case law interpreting its standards one cannot be deprived of liberty without due process of law. It is axiomatic that the Due Process of the Fourteenth Amendment "protects a defendant in a criminal case against conviction 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.'" Jackson v. Virginia, 443 U.S. 307, 315 (1979) (quoting In re Winship, 397 U.S. 358, 364 (1970)). In reviewing the "sufficiency of the evidence to support a criminal conviction" the relevant question is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson, 443 U.S. at 318.

In the following matter, the Petitioner asserts that the evidence presented at his trial in the Hampden County Superior Court was insufficient and thus a rational trier of fact could not have found that the Petitioner constructively possessed and intended to distribute over 28 but less than 100 grams of cocaine from Moises Market and constructively possessed and intended to distribute over 100 but less than 200 grams of cocaine from 139 Orange Street. On appeal, the

Massachusetts Appeals Court adopted the "statement of facts set out in the Commonwealth's memorandum of law in support of its motion for summary disposition" and ruled that the motions for required findings were correctly denied. The Appeals Court decision which rested on "the reasons set out in specific detail in the Commonwealth's memorandum" was an unreasonable application of the Constitutional standard set forth in <u>Jackson</u> as the evidence was insufficient to convict the Petitioner. Wherefore, the Petitioner is entitled to federal habeas relief pursuant to 28 U.S.C. §2254.

**ARGUMENT**

I.      STANDARD OF REVIEW

When reviewing a state prisoner's application for habeas corpus the reviewing court undertakes a two (2) part analysis involving two (2) separate and distinct standards. <u>See</u> <u>Hurtado v. Tucker</u>, 245 F.3d 7, 16 (1st Cir. 2001). The first part of the analysis the court must undertake is to identify the Constitutional standard in which the state prisoner argues has been violated in his state court proceedings. <u>Id.</u> at 16. In this matter, the Petitioner asserts that he was convicted upon insufficient evidence and that this conviction was inappropriately reaffirmed by the Massachusetts Appeals Court.

The proper standard in reviewing an insufficient evidence claim was set forth in <u>Jackson v. Virginia</u>, 443 U.S. 307, 316 (1979). In <u>Jackson</u>, the Supreme Court reaffirmed their holding in <u>In re Winship</u>, 397 U.S 358, when they stated that "<u>Winship</u> presupposes as an essential of the due process guaranteed by the Fourteenth Amendment that no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof-defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." 443 U.S. at 316. The <u>Jackson</u> Court went on to state that the constitutional right is

governed by the standard of "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. at 319. When challenging a state court conviction on the basis that it was in error due to insufficient evidence the Constitutional standard in Jackson is the correct standard to apply. See Hurtado, 245 F.3d at 13.

The second part of the analysis involves reviewing the state court's application of the Constitutional standard in the matter at hand. This part of the analysis is set forth in 28 U.S.C. §2254 which reads in part that "an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States . . . ." 28 U.S.C. §2254.

In interpreting these clauses, the Supreme Court held in Williams v. Taylor, 529 U.S. 362, 405 (2001), that the "contrary to" and "unreasonable application of" clauses have independent meanings. The "contrary to" clause involves a state court decision which applies "a rule that contradicts the governing law set forth in [the Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of the Court and nevertheless arrives at a result different from our precedent." Id. at 405-06. The "unreasonable application of" clause "identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principal to the facts of the prisoner's case." Id. at 413.

Further, the First Circuit has held that when reviewing a state court decision under the "unreasonable application of" standard the question is reduced to "whether the state court's

derivation of a case-specific rule from the [Supreme] Court's generally relevant jurisprudence appears objectively reasonable."[5]  Williams v. Matesanz, 230 F.3d 421, 425 (1st Cir. 2000).

Thus, in the instant matter, this court must review the decision set forth by the Massachusetts Appeals Court to determine if that court unreasonably applied the principles of Jackson to the instant matter, as it is the Petitioner's claim that the evidence was not sufficient to convict him on the elements of possession on both indictments beyond a reasonable doubt.  It should be noted that the Massachusetts Appeals Court adopted the appellate brief, and the reasons set forth therein, of the Commonwealth as their reasoning for affirming the trial court's denial of the Petitioner's motions for required findings without further discussion.

II.    THE JUDGE ERRED IN DENYING PETITIONER'S MOTIONS FOR A REQUIRED FINDING OF NOT GUILTY WHERE THE EVIDENCE WAS INSUFFICIENT TO PERMIT A RATIONAL TRIER OF FACT TO FIND THE PETITIONER GUILTY OF THE CHARGED OFFENSES BEYOND A RESONABLE DOUBT.

A.    INTRODUCTION

At trial the Commonwealth presented scant evidence connecting the Petitioner to the two (2) locations.  Only observations by the police of the Petitioner at a market on one (1) or two (2) occasions and the seizure of two (2) pill bottles with the Petitioner's name on them at the Petitioner's brother's apartment were presented by the Commonwealth in this case.  The Petitioner moved for a required finding of not guilty on both indictments at the close of the Commonwealth's case, at the end of the trial, and again in a post-verdict motion supported by a memorandum of law.  (Tr.-V-46; R.-16-19).  The court denied all three (3) motions.

---

[5] The Hurtado court suggested the following guidelines when reviewing insufficiency-of-the-evidence cases to determine the "objective unreasonableness" under 28 U.S.C. §2254: "(1) the focus of the inquiry in on the state court decision; (2) even with deference due by statute to the state court's determinations, the federal habeas court must itself look to the "totality of the evidence" in evaluating the state court's decision; (3) the failure of the state court to consider at all a key argument of the defendant may indicate that its conclusion is objectively unreasonable; however, the paucity of reasoning employed by the state court does not itself establish that its result is objectively unreasonable; (4) the failure of a state court to give appropriate weight to all the evidence may mean that its conclusion is objectively unreasonable; and (5) the absence of cases of conviction precisely parallel on their facts does not, by itself, establish objective unreasonableness." 245 F.3d at 18.

On appeal of a denial of a motion for a required finding of not guilty, the question as to

each indictment is, "whether any rational trier of fact, taking the evidence and reasonable

inferences there from in the light most favorable to the Commonwealth, could have found the

essential elements of the crime beyond a reasonable doubt." Commonwealth v. Cruz, 34 Mass.

App. Ct. 619, 621 (1993) (quoting Commonwealth v. Arias, 29 Mass. App. Ct. 613, 617 (1990),

citing Commonwealth v. Latimore, 378 Mass. 671, 677 (1979) and Commonwealth v. Merola,

405 Mass. 529, 533 (1989)).[6]

Both indictments charged the Petitioner with trafficking in cocaine. Proof of this offense

requires proof of five (5) elements. With the exception of the weight of the cocaine, the fifth

(5th) element, both indictments required proof of the same four (4) elements: (1) that the

Petitioner possessed a substance; (2) that the substance was cocaine; (3) that the Petitioner

possessed the cocaine knowingly and intentionally; and (4) that the Petitioner had the specific

intent to distribute the cocaine. Mass. Gen. Laws c. 94C, § 32E (b).

At trial the Commonwealth presented no evidence that the Petitioner had actual

possession of any of the drugs involved. Therefore, the burden was on the Commonwealth to

show that the Petitioner had "constructive possession" of the drugs. In the Commonwealth of

Massachusetts, "[f]or constructive possession to be found, the defendant had to know of the

presence of the cocaine, and he had to have the ability and intention to exercise dominion and

control over it." Cruz, 34 Mass. App. Ct. at 621, citing Commonwealth  v. Brzezinski, 405

Mass. 401, 409 (1989).

Additionally, the issue of possession of the drugs at Moises Market and the 139 Orange

Street residence should be considered separately, as it is possible to find the Petitioner

---

[6]  This is the same standard championed in Jackson v. Virginia. 443 U.S. 307.

responsible for possession of the drugs in one (1) of the two (2) areas and not the other. The Petitioner was convicted on two separate indictments and petitions this court for habeas corpus relief on the basis of insufficient evidence for both convictions.

      B.    "MOISES MARKET" CONVICTION

The Massachusetts Appeals Court, in adopting Commonwealth brief, holds that "the facts of this case supply significant additional evidence from which agreement, intent and control may be inferred and which tip the scale in favor of [legal] sufficiency." (Commonwealth's Appellate brief at 15). The Commonwealth, in its brief, restates much of the evidence connecting the codefendant to Moises Market but fails to supply any such additional evidence with respect to the Petitioner. (Commonwealth's Appellate brief at 15-16).

The Appeals Court finds, through the Commonwealth's brief, that the evidence of police observations gives rise to a reasonable inference that the Petitioner exercised dominion and control over the market and its contents but offers no further details of these observations which consisted solely of police seeing the Petitioner in the market once or twice over the course of a few months and encountering him behind the counter on the day of his arrest.

It is clear by the transcript that there were no drugs found on the Petitioner at the time of his arrest and no drugs were found near the counter where he was located when police entered the market. (Tr.-III-188). Further, only one hundred dollars ($100.00) was found on the Petitioner (Tr.-III-165) and the only drugs found at Moises Market were found hidden in the basement. (Tr.-III-136).

Although it could be reasonably inferred that the Petitioner worked at the store and that he had reason to go to the basement, "[p]resence and awareness alone do not constitute evidence which warrants an inference of ability and intention to exercise control of the illicit substance."

Commonwealth v. Brown, 34 Mass. App. Ct.. 222, 226 (1993). The drugs found in the basement were not in plain view, but were hidden inside a bag stuffed between milk crates. (Tr.-III-136).

In Commonwealth v. Brown, the drugs were all in plain view scattered about the same room the defendant was sitting in at the time of arrest, but the government did not present sufficient evidence to show "dominion and control" over the illegal substance. Id. Although it may be reasonable to infer that the Petitioner had access to the basement, there is no evidence from which one could infer that he had knowledge or dominion and control of the drugs that were hidden there. Hence, none of the three (3) factors of constructive possession were met. See Cruz, 34 Mass. App. Ct. at 621.

Additionally, in Commonwealth v. James, 54 Mass. App. Ct. 726 (2002), there were also two (2) separate areas (an apartment bedroom and locked attic) where police located drugs. The Massachusetts Appeals Court found that there was insufficient evidence that the defendant was aware of the powder cocaine in the attic and that he had the ability and intent to exercise dominion and control over it. Id. at 731. In James, the attic was only accessible through the locked shed on the third-floor porch of a three-level, three-family apartment house. Id. at 729. Nothing in the attic reasonably connected the defendant to the attic or the powder cocaine and police found no fingerprints that matched any of the suspects. Id. No direct evidence connected the defendant or any of the co-defendants to the combination lock, and no fingerprints were taken from it. Id. at 730.

Further, "[t]here was no demonstrable showing that the crack cocaine found in the apartment was derivative of the powder cocaine found in the attic, nor did the Commonwealth present any evidence to show similarities between the attic bags and the baggies found throughout the apartment." Id. See Commonwealth v. Movilis, 46 Mass. App. Ct. 574, 577

(1999) (finding no evidence of any similarities in either quality or packaging between cocaine seized in car and substance seized from table in café).

James is strikingly similar to the instant case where the record evidence is barren as to a demonstrable showing that the crack cocaine found at Moises Market was derivative of the powder cocaine found at the Orange Street apartment. As in James, the police found no fingerprints at the apartment that matched any of the suspects on the cocaine found at the market. Furthermore, in James there was a cutting agent found in one location, but not the other. The Massachusetts Appeals Court noted that this fact was but another separating factor that distinguished the two (2) quantities of cocaine. Id.

Equally, in our case, the police found packaging material and cutting agents at the Orange Street apartment, but nothing of similar description matching the two (2) quantities of cocaine were found at Moises Market. Also separating the petitioner from the basement is the fact that nothing introduced into evidence demonstrated any modus operandi of the individuals at the market going into the basement prior to or after the alleged sales of narcotics.

Further, the Petitioner only had one hundred dollars ($100.00) in U.S. currency on him when he was arrested. (Tr.-lll-165). This evidence, taken in the light most favorable to the Commonwealth, may be suggestive of drug sales, but this amount pales in comparison with the four hundred and sixty dollars ($460.00) found on the defendant in Commonwealth v. Navarro where the Court commented that the amount of cash, "does create suspicion about the defendant's activities. However, 'it is not enough for the appellate court to find that there was some record evidence, however slight, to support each element of the case.'" Commonwealth v. Navarro, 39 Mass. App. Ct. 161,169 (1995) (insufficient evidence to support conviction) (quoting Commonwealth v. Armand, 411 Mass. 167, 170 (1991)).

Contrary to the Massachusetts Appeals Court decision, through the Commonwealth's brief, there was no additional incriminating evidence which would permit a rational trier of fact to infer constructive possession from the Petitioner's mere presence at Moises Market. No evidence was offered to show that the Petitioner was observed entering the basement of Moises Market or that he had any knowledge of the presence of the drugs in the basement. Instead, the evidence presented by the Commonwealth against the Petitioner on this indictment was based entirely on his mere presence at Moises Market.

This court may consider the "totality of the evidence" in evaluating the state court's decision and may consider the aforementioned facts, or lack of evidence, when evaluating the reasonableness of the Massachusetts Appeals Court's decision. Hurtado, 245 F.3d at 18. Pursuant to the guidelines set forth by the First Circuit in Hurtado, the Massachusetts Appeals Court failed to give appropriate weight to all the evidence presented in this matter and thus their conclusion is objectively unreasonable. 245 F.3d at 18. More succinctly, by adopting the Commonwealth's brief without more discussion, the Massachusetts Appeals Court did not give the give appropriate weight to all the evidence on this particular indictment and thus their decision is objectively unreasonable and violates the Constitutional principles set forth in Jackson.

Most strikingly is that the Massachusetts Appeals Court, by adopting the Commonwealth's brief, did not distinguish, and thus consider, the evidence against the Petitioner and the evidence against his codefendant individually with regards to their respective indictments. Instead, the Massachusetts Appeals Court decision, through the adoption of the Commonwealth's appellate brief, presented the entire "lot" of evidence in this matter against both the Petitioner and codefendant. Such a presentation and subsequent adoption of facts and

20